UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Kelsy Arlitz, et al.,

                Plaintiffs

    v.

GEICO Casualty Company,

                Defendant

Case No. 2:19-cv-00743-CDS-DJA

**Order Denying GEICO's Motion for Reconsideration, Granting the Arlitzes' Motion for Reconsideration**

[ECF Nos. 190, 194]

       Both parties move for reconsideration of my prior order granting and denying in part GEICO's motion for summary judgment and denying the Arlitzes' motion for summary judgment. Because GEICO fails to demonstrate that it is entitled to summary judgment on either its breach of contract claim or its affirmative defense of collusion, I deny its motion for reconsideration. But because the Arlitzes have demonstrated that I erroneously construed their claim for breach of the implied covenant and fair dealing, I grant their motion for reconsideration and reinstate that claim (count II of the complaint). The parties are further instructed to attend a mandatory settlement conference before the magistrate judge assigned to this case. If they fail to settle, they are to file a joint pretrial order no later than 14 days after the final settlement conference.

**I.     GEICO's Motion for Reconsideration (ECF No. 190)**

       GEICO seeks reconsideration of my decisions to (1) deny summary judgment on whether the Schultes resided together, (2) deny summary judgment on whether GEICO's failure to defend its insureds caused the excess judgment, and (3) deny summary judgment on GEICO's affirmative defense of collusion during the arbitration.

A. *Summary judgment remains inappropriate on the plaintiffs' claim for breach of contract because a genuine dispute remains as to whether the Schultes resided together.*

GEICO argues that I erred by holding that the word "reside" carries with it ideas of permanency and continuity. ECF No. 190 at 6–11. It contends that the word "reside" only requires physical presence, such that Richard's (allegedly sporadic) physical presence at Christopher's house established that he resided there. *Id.* But GEICO's argument relies on a narrow holding from the Nevada Supreme Court, which states, "residence **under NRS 125.020** plainly requires only 'physical presence'—not an extra-textual intent to remain." *Senjab v. Alhulaibi*, 497 P.3d 618, 620 (Nev. 2021) (emphasis added). The Nevada Supreme Court constrained its holding to the divorce context, and overruled *Vaile v. Eighth Judicial District Court ex rel. County of Clark*, 44 P.3d 506 (Nev. 2002), insofar as *Vaile* considered residence synonymous with domicile in the context of divorce jurisdiction. *Id.*

My prior order did not rely upon *Vaile* in defining the term "reside"—to the contrary, I surveyed a number of dictionary definitions and found that most of them, too, defined "reside" by reference to permanence and continuity. ECF No. 189 at 16. While *Senjab* does not impute those concepts onto the word "residence" as used in the statute establishing subject-matter jurisdiction over divorce complaints, it also does not contravene my finding that generally—and especially in the ordinary usage of the word—"reside" carries with it an intent to remain. As the plaintiffs point out, even GEICO's own claims manual states that the presence of an individual claiming to be a resident of the same household as the named insured "require[s] more than temporary physical presence in the named insured's household" and "must be accompanied by an intention to remain there for some length of time[.]" ECF No. 193 at 5–6 (citing ECF No. 116-13). I never intended to give the impression that my definition of "reside" solely relied upon *Vaile*, which is why I relegated my discussion of the case to a footnote. Rather, I discerned the ordinary usage of the term "reside," which in all contexts outside of a very narrow construction of a Nevada divorce statute, carries with it ideas of permanence and continuity.

Of course, as a sophisticated drafter of insurance policies, GEICO could have chosen to define the word "reside" itself. It also could have asked Richard whether he resided with Christopher **before** it disclaimed coverage under that clause of the insurance contract. But then it would not have had wiggle room to construe the word flexibly in favor of its subsequent litigation position. A contract is ambiguous when it is subject to more than one reasonable interpretation. *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003). And, as the parties are well aware, any ambiguity should be construed against the drafter. *Mullis v. Nev. Nat'l Bank*, 654 P.2d 533, 535 (Nev. 1982). Because the word "reside" is subject to at least two reasonable interpretations—one carrying with it an idea of permanence and continuity, and one without—I must construe it against GEICO. I thus decline to reconsider my prior order with respect to the claim for breach of contract.

B. *Summary judgment remains inappropriate on whether the GEICO's failure to defend the Schultes caused the excess judgment and on GEICO's collusion defense.*

GEICO argues that I erred by conflating whether the Schultes had the benefit of an attorney in mounting a defense to the Arlitzes' lawsuit with whether the Schultes chose, with the benefit of such an attorney, to mount a collusive defense rather than an adversarial one. ECF No. 190 at 11–12. It contends that Christopher made clear to the Schultes' lawyer that she should "do whatever she needed to do so [Christopher] wouldn't be sued by [the Arlitzes] anymore," which constitutes a collusive defense. *Id.* at 12.

I first note that GEICO relies upon a number of cases from California and Arizona which stand for the proposition that as a matter of law, an insurer is not liable for an excess judgment when the insureds it disclaimed mount a non-adversarial defense. ECF No. 190 at 12–13. The only Nevada case it cites, *Andrew v. Century Surety Company*, 134 F. Supp. 3d 1249 (D. Nev. 2015), explicitly delineates between when a breach of the duty to defend would or would not proximately cause an excess judgment. It held that the causal link between breach and the excess judgment would arise when an insured was unrepresented by counsel and noted that the

causal link would be absent when "the judgment **would be the same as if the defense had been conducted by the insurer's counsel**." *Andrew*, 134 F. Supp. 3d at 1258–59 & n.2 (quoting *Rogan v. Auto-Owners Insurance Company*, 832 P.2d 212 (Ariz. Ct. App. 1991)) (emphasis added). The key language in *Rogan* and *Andrew* is that causality is most attenuated when the judgment would be the same regardless of the defense presented. And that is the area of genuinely disputed fact here—GEICO argues that Upson could have presented a variety of defenses, but it is not undisputed that **even if Upson had presented those defenses, the judgment would have differed**. Upson and the Schultes may have decided not to pursue GEICO's preferred line of defense (*i.e.*, presented testimony from a medical expert, an accident reconstructionist, etc.) for a host of reasons, perhaps related to the merits of those defenses or perhaps related to a desire to mount a non-adversarial defense in the face of the covenant not to execute. Of course, the plaintiffs bear the burden at trial of demonstrating that GEICO's breach of the duty to defend caused the excess judgment. But GEICO bears the burden at summary judgment of demonstrating that its breach did *not* cause the excess judgment. It has failed to demonstrate that there is no genuine dispute that the judgment would have differed if Upson presented alternate defenses. GEICO assumes that the covenant not to execute is sufficient to find a collusive defense, whereas the undisputed record belies that view. While Upson may have done more to attempt to mitigate the damages awarded by the arbitrator, there is no evidence suggesting that the arbitrator's judgment would have actually differed had she heard those defenses. The same is true of whether the arbitrator would have altered the judgment if she had learned of the covenant to not execute.[1]

    To be clear, I am not stating that as a matter of law, the Schultes were permitted to inflate the damages levied against them. I simply hold that whether the arbitrator's judgment

---

[1] GEICO asserts that I erred in stating that there was a genuine dispute as to whether the arbitrator was informed about the covenant not to execute. ECF No. 190 at 24. GEICO is correct in this regard—the deposition testimony suggests that neither attorney mentioned the covenant and the Arlitzes did not put forth any evidence that the arbitrator was so informed. I thus reconsider my prior ruling insofar as I found a genuine dispute about whether Judge Glass was informed of the covenant not to execute.

would have differed had she been presented all of the facts GEICO asserts are relevant—a more adversarial defense, the covenant not to execute—is still genuinely disputed by the parties. And it is not my place at summary judgment to decide that the arbitration award would have been different had those facts been presented.

GEICO argues that my reasoning creates a "tails Plaintiffs lose" and "heads GEICO wins" scenario. ECF No. 190 at 22–23. It argues that if the Schultes' litigation strategy *did not* create a difference in the arbitration award from GEICO's hypothetical strategy, then the plaintiffs will not be able to prove that GEICO's breach caused the excess judgment. *Id.* But if the Schultes' litigation strategy *did* create a difference from GEICO's, then GEICO wins its collusion defense. *Id.* This is patently incorrect, as a collusion defense does not "win" simply based on the fact that the award would have been different based on an alternate litigation strategy. Instead, as the authority to which GEICO cited and I reference in my prior order states, "what may constitute fraud or collusion is a fact-intensive inquiry determined on a case-by-case basis," determined by whether "the arbitration award was unreasonable, it involved any misrepresentation or concealment of material facts, there was a lack of arms-length negotiation, there were attempts to affect the insurance coverage or artificially increase damages flowing from the insurer's breach . . . and there was profit to the insured." ECF No. 189 at 30 (citing *Andrew*, 134 F. Supp. 3d at 1267–68) (other citations omitted). Undoubtedly, it will be difficult for the plaintiffs to argue that GEICO's breach caused them to suffer an increased judgment while also arguing that the arbitration was non-collusive. But the factors to be considered in determining whether an arbitration was collusive make it possible—to borrow GEICO's analogy—for the plaintiffs' coin to land on the thin-ridged edge, neither heads nor tails.

Finally, while I have reconsidered that there was a genuine dispute as to whether the arbitrator was informed of the covenant not to execute, I still find a genuine dispute as to whether the arbitration award was in fact the product of collusion. GEICO does not argue with my prior determination that allegations of collusion in the context of settling insurance claims

are generally issues to be determined by finders of fact. ECF No. 189 at 32 (citing *Century Sur. Co.*, 134 F. Supp. 3d at 1268 (collecting cases)). The issues to be tried in this case are those pertaining to the factors of collusion that I previously mentioned. The existence of the covenant not to compete and the fact the arbitrator was not informed of it are two undisputed factors, but the remainder of the factors pertinent to a collusion defense lies properly with the jury. I thus decline to reconsider my prior order declining to grant summary judgment on GEICO's affirmative defense.

## II.   The Arlitzes' Motion for Reconsideration (ECF No. 194)

The Arlitzes seek reconsideration of my decision to grant GEICO summary judgment on the claim for breach of the covenant of good faith and fair dealing. They argue that I "never analyzed GEICO's duty to inform in accordance with *Allstate Ins. Co. v. Miller*, 212 P.3d 318 (Nev. 2009) because [I] incorrectly conflated GEICO's duty to inform with its coverage obligation, which is separate and distinct." ECF No. 194 at 9. They add that I should have analyzed GEICO's duty to inform separately from GEICO's duties to defend or indemnify, and that GEICO breached its duty to make reasonable settlement decisions by failing to inform the Schultes of the Arlitzes' settlement offers. *See generally id.* Because it was not clear that the Arlitzes were pursuing two distinct claims of bad faith (first, in GEICO's decision to deny coverage, and second, in GEICO's decision not to inform the Schultes of an available settlement offer), I now consider the Arlitzes' claim of bad faith as a standalone claim not reliant upon a showing of breach of the duty to defend.

The Nevada Supreme Court has held that "an insurer's failure to adequately inform an insured of a settlement offer is also grounds for a bad-faith claim." *Miller*, 212 P.3d at 326. While the insurer's duty to defend creates a "cascading hierarchy of duties," including the "right to control settlement discussions," *Miller*, 212 P.3d at 324, I erred by assuming that the duty to inform was subsumed in the duty to defend such that an insurer with a reasonable—even if ultimately wrong—basis to deny coverage also had a reasonable basis to not inform its insureds.

All contracts include an implied covenant of good faith and fair dealing. *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993). A violation of this covenant gives rise to a bad-faith tort claim. *U.S. Fidelity v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975). And the Nevada Supreme Court "has previously held that a bad-faith action applies to more than just an insurer's denial or delay in paying a claim." *Miller*, 212 P.3d at 325. "An insurer's failure to adequately inform an insured of a settlement offer may also constitute grounds for a bad-faith claim." *Id.* (citing *Allen v. Allstate Ins. Co.*, 656 P.2d 487, 289 (9th Cir. 1981); *Miller v. Elite Ins. Co.*, 100 Cal. App. 3d 739 (Cal. 1980)). While *Miller* seems to imply that the duty to inform cascades from the duty to defend,[2] *id.* at 324, it also states that "if an insurer fails to adequately inform an insured of a known reasonable settlement opportunity prior to the filing of a claimant's lawsuit, the insurer may breach its duty of good faith and fair dealing." *Id.* at 325. The "if . . . [then]" construction of that phrase implies that an insurer's failure to inform is a sufficient condition for a court to find a possible breach of the implied covenant of good faith and fair dealing. And a sufficient condition is, of course, enough by itself.

The Arlitzes cite a bevy of case law supporting this proposition. ECF No. 194 at 11. And at least one court has found that "[f]ailure to communicate a settlement offer may, on its own, give rise to an insurance bad faith claim." *USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*, 921 F. Supp. 2d 1082, 1094 (D. Nev. 2013); *see also Prosser v. Leuck*, 592 N.W.2d 178, 183 (Wisc. 1999) (stating that an insurer must fulfill the obligation to inform an insured of any settlement offers received "as part of its fiduciary duty even if it challenges coverage"). While GEICO attempts to distinguish *USF* on the basis that the court found the insurer had a duty to defend its insured, ECF No. 198 at 15–16, such a distinction ignores the *USF* court's reasoning that liability on a failure-to-inform theory may "on its own" give rise to a bad-faith claim. 921 F. Supp. 2d at 1094.

---

[2] *Miller* itself seems to oscillate between finding a failure to inform "a factor . . . to consider when evaluating a bad-faith claim" and finding it a standalone ground for a bad faith claim. 212 P.3d at 325–26. Upon careful review of the cases *Miller* uses to stand for its proposition, I find that a bad faith claim for failure to inform may exist even without a claim for breach of the duty to defend.

Ultimately, I find that a failure-to-inform theory of bad-faith liability may exist separate from a theory of bad-faith liability premised on breach of an insurer's duty to defend. I reconsider my decision to grant GEICO summary judgment on the plaintiffs' claim for breach of the covenant of good faith and fair dealing.

**III.    Conclusion**

For the foregoing reasons, IT IS THEREFORE ORDERED that GEICO's motion for reconsideration **[ECF No. 190] is DENIED**.

IT IS FURTHER ORDERED that the Arlitzes' motion for reconsideration **[ECF No. 194] is GRANTED**. Their claim for breach of the implied covenant of good faith and fair dealing is reinstated.

IT IS FURTHER ORDERED that the order regarding granting GEICO's motion for summary judgment regarding plaintiff's covenant of good faith and fair dealing is vacated (ECF No. 189 at 33–35). GEICO's motion for summary judgment for breach of the implied covenant of good faith and fair dealing is DENIED with respect to the plaintiffs' claim arising out of GEICO's alleged breach of its duty to inform the Schultes of a settlement offer.

IT IS FURTHER ORDERED that the parties are to attend a settlement conference before the magistrate judge assigned to this case. Should they fail to settle all of the issues headed for trial, they must file a joint pretrial order in accordance with the local rules of this district no later than 14 days after the final settlement conference.

DATED: August 8, 2023

_____
Cristina D. Silva
United States District Judge

8